**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES SECURITIES AND EXCHANGE COMMISSION,** | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No: 17 CV 7049 |
| **ERIC WELLER,** | ) ) | Judge Manish Shah |
| Defendant. | ) | |

### DEFENDANT ERIC WELLER'S MOTION TO DISMISS COMPLAINT

NOW COMES Defendant, ERIC WELLER, by and through his attorney, Nishay K. Sanan, and herein submits this Motion to Dismiss the Complaint and supporting Memorandum.

### Procedural History

On September 29, 2017, The United States Securities and Exchange Commission filed a one count complaint against Eric Weller ("Weller") and several other co-defendants. On October 23, 2017, the United States Attorney's Office for the Norther District of Illinois filed its Motion to Intervene. This Court granted, in part, the Government's Motion staying the matter. From that point till the present, all of the co-defendants have resolved this matter and some are awaiting sentencing in the criminal case. Weller remains the only defendant in this matter

Weller went to trial in the criminal case and on April 16, 2019, the Jury convicted Mr. Weller on the conspiracy count but found him not guilty on Counts Three, Four, and Seven with purchasing certain securities (the actual "insider trading"). The three substantive counts (originally Counts Three, Four, and Seven

1

and renumbered as Counts Two Three and Four in the Indictment submitted to the jury), specifically reference 238 LTM options with a strike price of $65 purchased on 2/26/15 and 150 LTM options with a strike price of $65 purchased on 2/27/15. However, the evidence established no distinction between these particular purchases and the other purchases of LTM options by Mr. Weller during the relevant time period. Post-trial motions have been extensively briefed and are currently pending. Currently, sentencing is set for August 1, 2019 at 1:00 PM.

On June 11, 2019, on this Court lifted the stay on this matter and entered an order that Weller's answer is due on July 31, 2019. Weller believes the Complaint is defective and must be dismissed.

**Motion**

The United States Securities and Exchange Commission ("SEC") has failed to plead facts which demonstrate that Mr. Eric Weller ("Weller") violated Section 10(b) of the Securities Exchange Act of 1934 ('34 Act) or Rule 10b-5 thereunder. Thus, Weller respectfully moves to dismiss the claims against him pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which this Court can grant relief, and, in support of his motion, states the following:

1. The SEC alleges Peter Kourtis ("Kourtis"), who received a tip from Bret Beshey ("Beshey"), told Weller that Life Time would be acquired. Kourtis told Weller: (a) that Kourtis's friend Beshey had a long-time friend who was a high-level Life Time employee, (b) that Beshey's friend told Beshey that Life Time was going to be sold to a private company, and (c) that the buyer was going to pay

2

approximately $62 to $65 per share for Life Time's stock. See Compl. ¶56. The SEC's diagram shows the relationship between the defendants.



2. The SEC, filed an action seeking: (a) a permanent injunction against Weller, enjoining Weller from engaging in the transactions, acts, practices, and courses of business alleged in the complaint; (b) disgorgement of all ill-gotten gains from the unlawful conduct alleged in the complaint; (c) prejudgment interest; and (d) civil penalties. See Compl. ¶7.

3. To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) the Plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

4. For purposes of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6): (a) the complaint is construed in the light most favorable to the plaintiff; (b) the complaint's allegations are taken as true; and (c) all reasonable inferences that can be drawn from the pleading are drawn in favor of the pleader. See *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). Federal Courts are not,

however, required to take the pleading's legal conclusions or inferences as true. See *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

5. Federal Rule of Civil Procedure 12(b)(6) also requires plaintiffs to plead factual allegations which establish each necessary element of a claim under §10(b) of the '34 Act. See *Latigo Ventures v. Laventhol & Horwath*, 876 F.2d 1322 *(7th Cir. 1989)*.

5. The SEC's complaint has failed to plead facts which, even if taken as true, demonstrate the conversation, Weller had with Kourtis, gave Weller sufficient information to be aware of Shane Fleming's breach of a fiduciary duty. Fraud under the securities laws requires such knowledge, and so, as a matter of law, a failure to demonstrate a tippee's knowledge of a breach of fiduciary duties is a failure to demonstrate a violation of §10(b) of the '34 Act or Rule 10b-5 thereunder.

6. As the SEC fails to plead factual allegations which establish the necessary elements this Court must dismiss Plaintiff's claims against Weller with prejudice in their entirety.

7. In further support of this motion, Defendant submits the attached memorandum of points and authorities, and restates the argument therein.

WHEREFORE, as Plaintiff cannot supports its claim, Defendant respectfully moves this Court to dismiss the action against him with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which this Court can grant relief.

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT ERIC WELLER'S MOTION TO DISMISS

Defendant Eric Weller respectfully submits this memorandum of points and authorities in support of his Motion to Dismiss.

### FACTUAL AND PROCEDURAL BACKGROUND

Shane Fleming was a vice president of sales at Life Time Fitness ("Life Time") and, because of his position as a company insider, received information that private equity investors were looking to acquire Life Time. See Compl. ¶25. Fleming was aware this information was classified as "material" and knew Life Time policy and his fiduciary duties to shareholders meant he should not trade or encourage others to trade on this information. See *Id.* at ¶26. On February 23, 2015, Fleming spoke with Beshey, his long-time friend and business partner via telephone to inform Beshey about the acquisition offers and told Beshey he predicted Life Time's stock price would increase into the mid-$60 price range per share. See *Id.* at ¶27.

Beshey then tipped Kourtis with the information he received from Fleming about Life Time's upcoming acquisition. See *Id.* at ¶37. Beshey told Kourtis that he learned this information from his friend and business partner, Shane Fleming, who was employed in management at Life Time. See *Id.* at ¶38. Beshey also told Kourtis that Fleming said the buyer would pay approximately $62 to $65 per Life Time share. See *Id.* Beshey and Kourtis agreed that Kourtis would use his trading accounts to purchase Life Time options and that they would share the profits. See

5

*Id.* at ¶39. Beshey and Kourtis also agreed that Kourtis could share the inside information about Life Time with some of Kourtis's friends. See *Id.*

After Kourtis talked to Beshey he tipped his friend Eric Weller with the following information during a telephone call. See *Id.* at ¶55. "Kourtis told Weller: (a) that Kourtis's friend Beshey had a long-time friend who was a high-level Life Time employee, (b) that the Life Time insider told Beshey that Life Time was going to be sold very soon to a private company, and (c) that the buyer was going to pay approximately $62 to $65 per share for Life Time's stock." See Compl. ¶56. After Weller spoke to Kourtis he purchased $60 and $65 call options in Life Time. See *Id.* at ¶58.

On March 5, 2015, the Wall Street Journal published an article reporting that Life Time was in serious negotiations with private equity firms and would likely be acquired. See *Id.* at ¶62. Weller and the other defendants sold most of the call options during the March 6th trading day and the remaining options were sold prior to the March 16th official press release by Life Time that Life Time would, in fact, be acquired by a private equity firm. See *Id.* at ¶64.

## LEGAL STANDARD

### I. Federal Rule of Civil Procedure 12(b)(6)

For Plaintiff to successfully survive a motion to dismiss pursuant to Federal Rule of Civil procedure 12(b)(6) the "compliant must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a Plaintiff's factual allegations will be taken as true,

the Court retains the discretion to treat as true any legal conclusions or labels contained within a complaint. See *Id.* (citing *Twombly*, 550 U.S. at 555. Plaintiffs complaint must also plead factual allegations which establish each necessary element of a claim under §10(b) of the '34 Act. See *Latigo Ventures v. Laventhol & Horwath,* 876 F.2d 1322 (1989).

## II.     "Insider Trading" Violations of the Securities Laws

§10(b) of the '34 Act prohibits the "use or employment, in connection with the purchase or sale of any security, . . . [of] any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe." 15 U.S.C. §78j(b)). Rule 10b-5 makes it "unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange . . . [t]o employ any device, scheme, or artifice to defraud" or "[t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." 17 C.F.R. §240.10b-5.

The practice commonly known as "insider trading" is not formally designated as a type of fraud in any of the statutes comprising the securities laws. However, the Supreme Court has upheld the SEC's practice of categorizing the act as a type of securities fraud violative of §10(b) of the '34 Act and Rule 10b-5 thereunder. See *In re Cady, Roberts & Co.*, 40 S.E.C. 907 (1961); see also *Chiarella v. United States*, 445 U.S. 222 (1980) (holding that an insider breaches the duties of trust and

7

confidence owed to shareholders and, therefore, violates §10(b) and Rule 10b-5 when improperly disclosing or trading on confidential information).

Corporate insiders have a relationship with shareholders which creates a "disclosure obligation" such that failure to disclose material information to shareholders prior to trading on the information is violative of §10(b) and Rule 10b-5. See *Chiarella v. United States*, 445 U.S. at 227. A breach of the duty of trust and confidence also occurs where a corporate outsider obtains confidential information and improperly trades on the information. See *United States v. O'Hagan*, 521 U.S. 642, 663 (1997). The outsider who trades on confidential information has also breached a duty of trust and confidence which is derivative from the insider's breach and would also, therefore, violate §10(b) and Rule 10b-5. *Id*.

A corporate outsider who has been tipped by a corporate insider, known as a tippee, is liable for insider trading when the tipper breaches a duty of trust and confidence by disclosing the information to the tippee, and the tippee knew, or should have known, of the tipper's breach. See *Dirks v. SEC*, 463 U.S. 646 (1983). Since a personal benefit to the insider is necessary to show a breach of fiduciary duties, knowledge of personal benefit is required to show knowledge of a breach. *Id*.

### ARGUMENT

### I. Plaintiff Has Failed To Plead Facts Showing Weller Had Knowledge of Fleming's Breach of His Fiduciary Duties

In *Dirks*, the Court held that to determine whether disclosure of confidential information results in a breach of fiduciary duties, "the test is whether the insider personally will benefit, directly or indirectly, from his disclosure" *Dirks v. SEC*, 463

8

U.S. at 662. Going further, the Court ruled that "[a]bsent some personal gain, there has been no breach of duty to stockholders. And absent a breach by the insider, there is no derivative breach." *Dirks v. SEC*, 463 U.S. at 662.

An insider can receive a variety of personal benefits which, if exchanged for confidential information, results in insider trading. Such benefits include pecuniary benefits, property, reputational gain aiming to achieve future earnings, and even the gifting of information to a close trading relative or friend. *Salman v. United States*, 137 S. Ct. 420 (2016). *Salman* involved an insider, the insider's brother, and the insider's brother-in-law who traded on material, nonpublic information. The insider divulged information to Salman's brother who then divulged the information to Salman. Salman was also the insider's brother-in-law. Although Salman had not exchanged pecuniary benefits for receiving the information, the Court reasoned that for certain close relationships like those at issue in *Salman*, a benefit can be inferred and the benefit to the insider need not be pecuniary. *Id.* The court held that the inference for close relationships is permissible because the nature of these relationships makes it as if the insider traded for profit on inside information and then made a gift to the tippee. *Id.*

However, the recent decision in *Salman* speaks to when the Court may infer a personal benefit to the insider from his gift of information, it does nothing to upset or limit the scienter requirement that a tippee must have information putting him on notice of such a benefit and, therefore, such a breach of fiduciary duties. *Id.* The Court says as much when it explicitly holds that *Dirks* is still good law. See *Id.* at

9

422. As the Court pointed out in *Dirks*, "a tippee assumes a fiduciary duty to the shareholders of a corporation not to trade on material, nonpublic information only when the insider has breached his fiduciary duty to the shareholders by disclosing the information to the tippee *and the tippee knows or should know* that there has been a breach." *Dirks v. S.E.C.*, 463 U.S. at 660 (emphasis added). In essence, a tippee still must know about a personal benefit to the insider to know there has been a breach of fiduciary duties. Whether that benefit falls under the rubric of "pecuniary" or "gifts to close trading relatives" makes little difference in determining whether the tippee had the requisite state of mind to commit a §10(b) or Rule 10b-5 violation.

Here, as in *Dirks*, Weller is not liable merely for being in possession of material, nonpublic information. See *Id*. The SEC alleges four specific facts which they believe shows Weller committed insider trading: (1) Kourtis told Weller Life Time was going to be acquired; (2) Kourtis told Weller that Life Time's stock price would go up to a specific price range; (3) Kourtis told Weller that the information was supplied by Kourtis' friend Beshey who was in turn supplied by his friend, a higher up at Life Time; and (4) Weller's trading activity purportedly shows evidence he was in possession of Life Time's confidential information. See Compl. ¶56.

However, none of the alleged facts, even if taken as true, would put Weller on notice that an insider had breached a fiduciary duty. Points (1), (2), and (4), taken as true, only demonstrate Weller was in possession of confidential information. Again, this fact alone is not enough to create liability: knowledge of a breach is

10

critical. See *Dirks v. S.E.C.*, 463 U.S. at 660. Likewise, point (3) is not a factual allegation showing that Weller knew Fleming was receiving pecuniary kickbacks from Beshey in exchange for information that Weller knew Fleming had a duty not to disclose. Nor does point (3) show that Weller knew details about either Beshey or Fleming prior to, or through, his conversation with Kourtis to suggest that Beshey and Fleming had a relationship meeting the "close trading relatives and friends" standard applied in *Salman*. See *Salman v. United States*, 137 S. Ct. 420.

The standard applied in *Salman*, after all, does not state that any two persons automatically have a relationship which meets the gifting standard, rather, only certain relationships. *Id*. In *Salman*, the Court noted that liability only extends under a "close trading relatives and friends" standard when the facts show little difference between the insider gifting the information to a tippee and the insider trading on the information and subsequently gifting the profits to the tippee. Here, Weller knows nothing about Beshey or Fleming, much less the nature and depth of their friendship such that Weller should have known Beshey's mere possession of the information was equivalent to Fleming trading on the information and giving the profits to Beshey constituted a breach of fiduciary duties.

The SEC does not raise a claim about Weller's knowledge or negligence in lacking knowledge concerning the arrangement between Fleming and Beshey or between Beshey and Kourtis. Not only has the SEC failed to plead sufficient facts about Weller's awareness of a pecuniary *quid pro quo* but they have also failed to show Weller had knowledge of the relationships between Fleming, Beshey, or

11

Kourtis which would satisfy the standard applied in *Salman*. Therefore, Plaintiff's complaint is inadequate because it fails to plead facts which support a necessary element of a §10(b) violation under a theory of insider trading, namely, that Weller was aware of Fleming's breach of his fiduciary duties.

## CONCLUSION

Accordingly, all claims against Weller should be dismissed with prejudice.

Respectfully submitted,
/s/ Nishay K. Sanan
Nishay k. Sanan
53 W. Jackson Blvd.,
Suite 1424 Chicago, Illinois 60604
Tel: 312-692-0360
Nsanan@aol.com