UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                                  Plaintiff,<br>    v.<br><br>SHANE P. FLEMING, BRET J. BESHEY, CHRISTOPHER M. BONVISSUTO, PETER A. KOURTIS, ALEXANDER T. CARLUCCI, DIMITRI A. KANDALEPAS, AUSTIN C. MANSUR, and ERIC L. WELLER,<br><br>                                  Defendants. | 17-CV-7049<br><br>Judge Manish S. Shah |

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S
RESPONSE TO DEFENDANT ERIC WELLER'S MOTION TO DISMISS**

## I.     Introduction

Following a jury trial in April 2019, Defendant Eric Weller was convicted of conspiracy to commit securities fraud based on the same factual conduct alleged in Plaintiff Securities and Exchange Commission's ("SEC") complaint. *See United States v. Weller*, 17-CR-643-6 (Hon. Matthew Kennelly).[1] Weller's post-trial motion for judgment of acquittal was denied on July 30, 2019 [Criminal docket no. 314], and he is now awaiting sentencing and a ruling on the Government's pending motion for forfeiture.

---

[1] Weller's co-defendants in the criminal case—who are (with the exception of Chasity Clark) also defendants in this case—all entered into plea agreements with the United States Attorney for Northern District of Illinois. They also entered into settlements with the SEC in this case.

In his pending Motion to Dismiss the SEC's complaint, Weller argues that the SEC failed to plead one of the elements necessary to find him liable for violating Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder by engaging in insider trading. Specifically, Weller claims the SEC's complaint insufficiently alleges that he had knowledge of Defendant Shane Fleming's breach of fiduciary duty. (Weller Mot., dkt. 64, at 4.) The SEC's complaint, however, expressly alleges that Weller was told that Fleming tipped the inside information to Fleming's long-time friend, Defendant Bret Beshey. (Compl. ¶ 56.) That allegation easily establishes that Weller was aware (or should have been aware) that Fleming breached his fiduciary duty by tipping his friend Beshey. *See Dirks v. SEC*, 463 U.S. 646, 664 (1983) ("The elements of fiduciary duty and exploitation of nonpublic information also exist when an insider makes a gift of confidential information to a trading relative or friend."); *see also Salman v. United States*, 137 S.Ct. 420, 427 (2016) (reaffirming holding in *Dirks*).

Accordingly, the Court should deny Weller's motion to dismiss.

## II.  Facts Alleged in Complaint

The Complaint alleges that, on or before February 23, 2015, an in-house lawyer at Life Time Fitness, Inc. ("Life Time") told Defendant Fleming that Life Time was going to be acquired. At the time, Fleming was a vice president of sales at Life Time. The in-house lawyer also told Fleming he could not discuss the upcoming acquisition with any outsiders and could not trade on the information. [Compl. ¶ 25.]

On February 23, 2015, Fleming told his long-time friend and business partner, Defendant Beshey, that Life Time was being acquired and that the acquisition would cause Life Time's stock price to increase to the mid-$60 range per share. The two then also discussed that Beshey would use the information to make a profit by trading on it or by recruiting others to trade Life Time securities and that Beshey would share the profits with Fleming. [*Id.* ¶ 27.]

Beshey subsequently tipped the inside information he received from Fleming to others, including Defendant Peter Kourtis. [*Id.* ¶¶ 31, 35, 37 (Kourtis tip).] Beshey told Kourtis the inside information he received from Fleming. Beshey and Kourtis agreed that Kourtis could share the inside information with Kourtis's friends and that Kourtis would purchase Life Time options and share the profits with Beshey. [*Id.* ¶¶ 37-40.]

Kourtis subsequently tipped the inside information to four of his friends, including Defendant Weller:

> "During a telephone call in late February 2015, Kourtis told Weller the inside information about Life Time's impending acquisition he had received from Beshey. Kourtis told Weller: (a) that Kourtis's friend Beshey had a long-time friend who was a high-level Life Time employee, (b) that the Life Time insider told Beshey that Life Time was going to be sold very soon to a private company, and (c) that the buyer was going to pay approximately $62 to $65 per share for Life Time's stock." [*Id.* ¶¶ 41-42, 56.]

During this same telephone call, Weller agreed to kickback some of his trading profits to Kourtis. [*Id.* ¶ 56.]

Using the inside information about Life Time's acquisition he received from Kourtis, Weller bought over 1,000 Life Time call options. [*Id.* ¶ 58.] After news

3

about Life Time's upcoming acquisition became public on March 5, 2015, Life Time's stock price rose sharply. [*Id.* ¶¶ 62-63.] The next day, Weller sold most of his Life Time call options. He sold his remaining call options on March 16, 2015. In total, Weller realized profits of $554,778. [*Id.* ¶ 72.]

Weller gave Kourtis at least ten pounds of marijuana as a kickback for sharing the inside information about Life Time. Kourtis sold Weller's marijuana for over $20,000. [*Id.*]

### III. Applicable Legal Standards

*A. The Court Must Accept As True All Factual Allegations and Draw All Reasonable Inferences in Plaintiff's Favor.*

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Berger v. Nat. Collegiate Athletic Assoc.*, 843 F.3d 285, 289 (7th Cir. 2016). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 645 (7th Cir. 2018).

4

B.  *A Corporate Insider Breaches His Fiduciary Duties if*
    *He Discloses Material Nonpublic Information to a "Friend."*

Section 10(b) of the Exchange Act and Rule 10b-5 prohibit a corporate insider from tipping material, nonpublic information to an outsider if the disclosure of that information constitutes a breach of the insider's fiduciary duty. *Salman*, 137 S. Ct. at 423. "Whether the [insider] breached that duty depends 'in large part on the purpose of the disclosure' to the tippee." *Id.* (quoting *Dirks*, 463 U.S. at 662). The test "'is whether the insider personally will benefit, directly or indirectly, from his disclosure.'" *Id.* This personal benefit requirement is broad and can be inferred "from objective facts and circumstances," including "*when an insider makes a gift of confidential information to a trading relative or friend.*" *Id.* (emphasis in orig.). In such cases, "[t]he tip and trade resemble trading by the insider followed by a gift of the profits to the recipient." *Id.*

C.  *A Tippee Is Liable if He Knew or Should Have Known*
    *of the Insider's Breach of His Fiduciary Duty.*

A tippee who acquires inside information inherits the insider's duty not to trade on that information. *See SEC v. Maio*, 51 F.3d 623, 633 (7th Cir. 1995) (citing *Dirks*). The tippee, however, is not liable unless he knows or should know that the insider disclosed the inside information in breach of his fiduciary duties. *Id.* ("[Tippee] had a derivative duty not to trade Anacomp stock on the basis of material non-public information provided by [insider], if he knew or should have known that [insider] had provided this information in violation of his fiduciary duty."). Put another way, the "tippee assumes a fiduciary duty to the shareholders of a corporation not to trade on material nonpublic information only when the insider

5

has breached his fiduciary duty to the shareholders by disclosing the information to the tippee *and the tippee knows or should know that there has been a breach*." *Dirks,* 463 U.S. at 660 (emphasis added).

And, as discussed above, an insider breaches his fiduciary duty—*i.e.*, receives a personal benefit—when he tips confidential inside information to a friend. *Dirks*, 463 U.S. at 662; *SEC v. Maio*, 51 F.3d 623, 633 (7th Cir. 1995) (finding second-level tippee liable for insider trading because she "knew that Ferrero [insider] and Maio [first-level tippee] were friends, and she knew that Ferrero held an important position at Anacomp"); *United States v. Evans*, 486 F.3d 315 320-22 (7th Cir. 2007) (discussing *Dirks*).

## IV. <u>Argument</u>

In the complaint, the SEC alleges that Defendant Peter Kourtis told Weller "(a) that Kourtis's friend Beshey had a long-time friend who was a high-level Life Time employee; (b) that the Life Time insider told Beshey that Life Time was going to be sold very soon to a private company, and (c) that the buyer was going to pay approximately $62 to $65 per share for Life Time's stock." [Compl. ¶ 56.]

The SEC's complaint alleges that Kourtis explicitly told Weller that the information came from a corporate insider who shared the information with a "long-time friend." Under *Dirks, Salman, Maio,* and many other cases[2] that allegation is

---

[2] *See, e.g., SEC v. Sargent*, 229 F.3d 68, 77 (1st Cir. 2000) ("The benefit to the tipper need not be 'specific or tangible.' A gift to a friend or relative is sufficient.") (internal cites omitted); *SEC v. Yun*, 327 F.3d 1263, 1280 (11th Cir. 2003) (proof that insider and tippee were "friendly," had worked together, and had split commissions on real estate deals in the past was sufficient to meet personal benefit requirement); *SEC v. Wang*, 2016 WL 7671369, *4 (C.D. Cal. Sept. 27, 2016) (holding SEC adequately pleaded personal benefit "by alleging

6

sufficient to show that Weller knew (or certainly should have known) that the Life Time insider, Fleming, personally benefitted—and thus breached his fiduciary duties—by gifting valuable confidential information about an acquisition to his long-time friend Beshey.

Weller mischaracterizes the Supreme Court's holding of *Salman* by arguing that *Salman* requires that the insider's disclosure be "to a close trading relative or friend" (Weller Mot. at 9.) in order for the insider to receive a personal benefit from the disclosure and, therefore, breach his fiduciary duties. Weller is wrong. Neither *Salman* nor *Dirks*, which *Salman* expressly reaffirmed, hold that the friendship must be "close." In fact, the phrase "close trading relative or friend" does not appear anywhere in either decision.

Weller's argument that a friendship must be "close" for there to be a personal benefit is based on the Second Circuit's decision in *United States v. Newman*, 773 F.3d 448 (2d Cir. 2014), which *Salman* at least partially overruled. *Salman* neither created nor supported a requirement that a friendship must be a "close friendship" in order to satisfy the personal benefit requirement. To the contrary, *Salman* explicitly reaffirmed the holding in *Dirks* that a gift of confidential inside information to a relative or friend is sufficient. After *Salman*, the viability of *Newman's* "meaningfully close" analysis is seriously in doubt even within the Second Circuit. *See United States v. Pinto-Thomaz*, 352 F. Supp. 2d 287, 301

---

Yin and Wang had been friends and members of the same church since 2005"); *SEC v. Michel*, 521 F. Supp. 2d 795, 805 & 826-28 (N.D. Ill. 2007) (finding that SEC proved a breach of fiduciary duty where tipper misappropriated corporate information and shared it with a "long-time friend," who in turn tipped the defendant).

7

(S.D.N.Y. 2018) (post-*Salman*) ("[T]o the extent that *Newman* grafted an additional requirement of a 'meaningfully close personal relationship' on to the 'intention to benefit' means of establishing personal benefit under *Dirks*, it was inconsistent with *Dirks*...."). It is not—and has never been—the law in this circuit.

Moreover, even under Weller's erroneous standard requiring proof of a close friendship, the SEC's complaint survives because it pleads that Kourtis told Weller that the information was provided by the insider to his "long-time friend." Thus, even if the Court applied Weller's incorrect, more demanding "close friend" standard, the Court—drawing all reasonable inferences in the SEC's favor—must deny Weller's motion.

For the reasons stated above, the Court should deny Weller's Motion to Dismiss.

Dated: August 19, 2019          Respectfully submitted,

By: s/Daniel J. Hayes
Daniel J. Hayes
Andrew McFall
U.S. SECURITIES AND EXCHANGE COMMISSION
175 West Jackson Blvd., Suite 1450
Chicago, IL 60604
Phone: (312) 353-3790
Facsimile: (312) 353-7398

8

**CERTIFICATE OF SERVICE**

 Daniel J. Hayes, an attorney, hereby certifies that, on August 19, 2019, he caused a copy of the foregoing document to be filed via the Court's ECF system, which will automatically send a copy of the document to counsel of record.

             s/ Daniel J. Hayes