UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES SECUIRITES AND EXCHANGE COMMISSION, | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No: 17 CV 7049 |
| ERIC WELLER, | ) ) | Judge Manish Shah |
| Defendant, | ) | |

### DEFENDANT ERIC WELLER'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

NOW COMES Defendant, ERIC WELLER, by and through his attorney, Nishay K. Sanan, and herein submits this Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss.

### ARGUMENT

The SEC alleged in its Response to Defendant's Motion to Dismiss ("Plaintiff's Response") that Weller asked this Court to apply a defunct legal standard handed down in *United States v. Newman*, 773 F.3d 448 (2nd Cir. 2014). See Plaintiff's Response at 7 ("Weller's argument that a friendship must be 'close' for there to be a personal benefit is based on the Second Circuit's decision in *United States v. Newman* . . . ). The SEC pointed out that the "trading relative and friend" formulation of the personal benefit test does not use the word "close," and cited *Dirks v. SEC*, *United States v. Salman*, and *SEC v. Maio* in support of its allegation. *Id*. The SEC reasoned that because "close" was not used as a descriptor in the formulation of the test, Weller's knowledge under the alleged facts is clearly enough

1

to know Fleming had breached his fiduciary duty to Life Time. See Plaintiff's Response at 6-7.

However, *Dirks*, *Salman*, and *Maio*, when read in their full context, establish the liability of the defendant by discussing the nature of the insider's relationship to the tippee and the insider's intention when making the tip. *See SEC v. Dirks*, 463 U.S. 646 (1983); *United States v. Salman*, 137 S. Ct. 420 (2016); *SEC v. Maio*, 51 F.3d 315 (7th Cir. 1995). None of the cases the SEC cites are decided merely because a defendant was told at one point that two other persons in the tippee chain were friends. *See Id*.

In *Maio*, a corporate insider, Ferrero, breached his fiduciary duty by disclosing material, nonpublic information to his friend Maio who then disclosed the information to a mutual friend, Ladavac. *SEC v. Maio*, 51 F.3d 623, 626-627. Maio and Ladavac were charged as codefendants after trading on the information and found liable for securities fraud. *Id*. In deciding whether Maio and Ladavac were liable for fraud, the Court explicitly noted the pattern of favors that Ferrero and Maio had performed for each other over a decades-long relationship including an unsecured loan to Maio for $250,000 and Maio's recommendation which got Ferrero his current job. *Id.*, at 627. The Court also noted that Palamara, a different mutual friend, asked Ferrero to take care of Maio while Palamara was on his deathbed. *Id*. The Court continued to point out that the codefendant, Ladavac, was friends with both Ferrero and Maio, that she knew about the pattern of favors between the two, and that she had performed similar favors for Ferrero in the past. *Id*. In concluding

the introduction to the opinion, the Court pointed out that, "Against the backdrop created by these *close friendships*, we consider the securities trading that gave rise to this case." *Id.*, at 627 (emphasis added).

The facts at issue in *Maio* bear little resemblance to the facts here. Kourtis allegedly told Weller that Fleming and Beshey were friends precisely once during a phone conversation. Such knowledge is easily distinguished from Ladavac's, who knew of, and participated in, a multi-decade enterprise of exchanging favors and making deals between the insider and the first level tippee. The SEC's parenthetical quotation from *Maio* that a second level tippee was found liable for fraud because she knew the insider and first level tippee were friends is accurate but not the whole story. Plaintiff's Response at 6. Such a characterization fails to be fully forthright with this Court about the full context that the Court in *Maio* was discussing.

In *Salman*, a corporate insider, Maher, passed material, nonpublic information to his brother Michael with the knowledge or the intention that Michael would trade on the information for his own personal benefit. *United States v. Salman*, 137 S. Ct. at 423. Maher and Michael engaged in this behavior multiple times in the past. *Id.*, at 424 Michael passed the information to his friend, Salman, who was also Maher and Michael's brother-in-law. *Id.* Salman traded on the information knowing that Maher gave the tip to Michael as a gift with the knowledge or intention that Michael would trade on the information. *Id.*, at 425. The Court rejected Salman's argument that Maher needed to receive a material or

3

pecuniary benefit beyond gifting the information to Michael in order to breach his fiduciary duty. *Id.*, at 428.

The Court did not merely note that Maher and Michael were related and find that the personal benefit test was satisfied. Instead, the Court noted that "Maher *enjoyed a close relationship* with his brother" and that Maher's gift of information to Michael was enough to qualify as a personal benefit under *Dirks* because "Maher, the tipper, provided inside information *to his close relative*, his brother Michael." *United States v. Salman*, 137 S. Ct. at 424, 427. The Court also noted that Michael was described as "a second father" to Maher and was also best man at Salman's wedding. *Id.*, at 424. Clearly the nature of the relationship between Maher and his brother was important to the Court in reaching its conclusion. Salman, due to his familial relationship with Maher and Michael, was obviously on notice that the gift of information from Maher to Michael was materially identical to Maher trading on the profits and gifting the proceeds to Michael. *Id.*, at 425. Weller's lack of basic knowledge about the relationship between Fleming and Beshey easily distinguish his position from Salman's. *See Id*.

In *Dirks*, the defendant was directly tipped material, nonpublic information by a corporate insider who told the defendant he should disseminate the information to expose corporate fraud. *Dirks v. SEC*, 463 U.S. 646, 649-50. The defendant openly discussed the material, nonpublic information with his clients and investors who then traded on the information to avoid losses or make profits. *Id*. Although actual trading on material, nonpublic information occurred as a direct

4

result of the defendant's actions, the Court held the defendant was not liable for securities fraud because the insider had not personally benefited, nor intended to benefit the defendant, when leaking the material, nonpublic information. *Id.*, at 667. In issuing its ruling, the Court pointed out that, contrary to the SEC's position, a defendant who received material, nonpublic information and knew the information came from an insider would be under no obligation to refrain from trading, reasoning that analysts need to be able to "ferret out" market information in order for the financial system to function. *Id.*, at 658-59. The Court further reasoned that the key issue in deciding if a tippee was liable was whether the defendant knew the insider's dissemination of material, nonpublic information was "improper." *Id.*, at 660. Here, Weller was never given information which would put him on notice of Fleming's nefarious intent and so cannot be found to have knowledge of a fiduciary breach under the purpose or intention theory that the Court used in *Dirks* to determine whether the insiders were receiving a personal benefit when giving Dirks the inside information. *See Id.*

    Thus, the SEC is unable to cite any cases which factually resemble the position Weller occupies under the facts they allege. Weller was not a family member and friend of the insider and tippee as in *Salman*, Weller did not know or engage in exchanging favors with the insider and tippee as in *Maio*, and Weller did not know any information about the tipper's intent which would put him on notice that the trading tip was improperly disclosed as the Court requires in *Dirks*.

THEREFORE, Weller's Motion to Dismiss is perfectly consistent with the Supreme Court's decision in *Dirks*, and because the only cases cited by the SEC in its Response do nothing to detract from the argument put forward in Weller's Motion to Dismiss, this Court should dismiss this matter against Weller with prejudice.

    Respectfully submitted,
/s/ Nishay K. Sanan
Nishay k. Sanan
53 W. Jackson Blvd.,
Suite 1424 Chicago, Illinois 60604
Tel: 312-692-0360
Nsanan@aol.com