## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                                **Plaintiff,**<br><br>    v.<br><br>SHANE P. FLEMING, BRET J. BESHEY, CHRISTOPHER M. BONVISSUTO, PETER A. KOURTIS, ALEXANDER T. CARLUCCI, DIMITRI A. KANDALEPAS, AUSTIN C. MANSUR, and ERIC L. WELLER,<br><br>                                **Defendants.** | 17-CV-7049 |

## ANSWER AND JURY DEMAND ON BEHALF OF
## DEFENDANT ERIC WELLER

Defendant Eric L. Weller ("Weller"), by and through undersigned counsel, answers

Plaintiff U.S. Securities and Exchange Commission's (SEC or the "Commission") Complaint in

the above-captioned matter as follows:

### SUMMARY

1.      This case involves insider trading in the securities of Life Time Fitness, Inc. ("Life Time") in advance of the March 2015 announcement that the company was going to be purchased and taken private. Based on a series of tips that originated from Life Time employee Shane Fleming and were passed from one defendant to the next, the traders who participated in this scheme collectively bought 2,099 out-of-the-money Life Time call options and 250 Life Time shares in the weeks leading up to the announcement. Defendants sold the options and shares they had acquired after news of Life Time's acquisition became public, realizing total illegal profits of approximately $866,629.

**ANSWER:**

To the extent that the allegations in paragraph 1 of the Complaint relate to Weller, and

require a response, Weller denies the allegations and demands strict proof thereof. To the extent

1

that the allegations in paragraph 1 do not relate to Weller, he denies knowledge and information sufficient to form a belief as to the truth of the allegations, which should be construed as a specific denial for the purpose of Federal Rule of Civil Procedure 8.

2.     Defendant Shane Fleming, a vice president of sales at Life Time, learned of the company's negotiations to sell itself on or before February 23, 2015, and tipped his long-time friend and business partner, defendant Bret Beshey.  Rather than trading in his own name, Beshey tipped his friends, defendants Christopher Bonvissuto and Peter Kourtis, who agreed to share some of their trading profits with him.  Beshey also tipped his friend Individual A, who traded profitably on the tip and gave some of his proceeds to Beshey in the form of a purported loan.

**ANSWER:**

To the extent that the allegations in paragraph 2 of the Complaint relate to Weller, and require a response, Weller denies the allegations and demands strict proof thereof.  To the extent that the allegations in paragraph 2 do not relate to Weller, he denies knowledge and information sufficient to form a belief as to the truth of the allegations, which should be construed as a specific denial for the purpose of Federal Rule of Civil Procedure 8.

3.     Kourtis, in turn, tipped the inside information he received from Beshey to four of his friends: defendants Alexander Carlucci, Dimitri Kandalepas, Austin Mansur, and Eric Weller.  Carlucci, Mansur, and Weller agreed to pay, and ultimately did pay, Kourtis a kickback in exchange for the tip.

**ANSWER:**

To the extent that the allegations in paragraph 3 of the Complaint relate to Weller, and require a response, Weller denies the allegations and demands strict proof thereof.  To the extent that the allegations in paragraph 3 do not relate to Weller, he denies knowledge and information sufficient to form a belief as to the truth of the allegations, which should be construed as a specific denial for the purpose of Federal Rule of Civil Procedure 8.

4.     The following diagram depicts the flow of inside information from Fleming to Beshey and from Beshey to the downstream traders:



**ANSWER:**

To the extent that the allegations in paragraph 4 of the Complaint relate to Weller, and require a response, Weller denies the allegations and demands strict proof thereof. To the extent that the allegations in paragraph 4 do not relate to Weller, he denies knowledge and information sufficient to form a belief as to the truth of the allegations, which should be construed as a specific denial for the purpose of Federal Rule of Civil Procedure 8. Weller further states that the diagram is not based upon fact as it relates to him, rather it is an inadmissible demonstrative aide.

5. On March 5, 2015, after the close of trading, the Wall Street Journal published an article reporting that Life Time was in negotiations with two private equity firms to be acquired and taken private. The next day, Bonvissuto, Kourtis, Carlucci, Kandalepas, Mansur, and Weller sold most of their call options. The defendants sold their remaining positions on or before March 16, 2015, the day that Life Time officially announced the merger in a press release. Bonvissuto and Kourtis subsequently sent approximately $19,300 of their trading proceeds to Beshey, who in turn paid approximately $10,000 to Fleming. After selling their options, Carlucci and Mansur gave Kourtis cash, and Weller gave Kourtis at least 10 pounds of marijuana as a kickback for providing the tip about Life Time.

**ANSWER:**

To the extent that the allegations in paragraph 5 of the Complaint relate to Weller, and require a response, Weller denies the allegations and demands strict proof thereof. To the extent that the allegations in paragraph 5 do not relate to Weller, he denies knowledge and information sufficient to form a belief as to the truth of the allegations, which should be construed as a specific denial for the purpose of Federal Rule of Civil Procedure 8.

6.     As a result of the conduct alleged herein, defendants violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

**ANSWER:**

To the extent that the allegations in paragraph 6 of the Complaint relate to Weller, and require a response, Weller denies the allegations and demands strict proof thereof. To the extent that the allegations in paragraph 6 do not relate to Weller, he denies knowledge and information sufficient to form a belief as to the truth of the allegations, which should be construed as a specific denial for the purpose of Federal Rule of Civil Procedure 8.

7.     The Commission seeks a permanent injunction against defendants, enjoining them from engaging in the transactions, acts, practices, and courses of business alleged in this Complaint, disgorgement of all ill-gotten gains from the unlawful conduct set forth in this Complaint, together with prejudgment interest, civil penalties pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1], an officer and director bar against Fleming pursuant to Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)], and such other relief as the Court may deem just and proper.

**ANSWER:**

Paragraph 7 of the Complaint states a legal conclusion for which no responsive pleading is required. To the extent that the allegations in paragraph 7 of the Complaint relate to Weller, and require a response, Weller denies the allegations and demands strict proof thereof. To the extent that the allegations in paragraph 7 do not relate to Weller, he denies knowledge and

information sufficient to form a belief as to the truth of the allegations, which should be

construed as a specific denial for the purpose of Federal Rule of Civil Procedure 8.

## JURISDICTION AND VENUE

8.  This Court has jurisdiction over this action pursuant to Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa].

**ANSWER:**

Paragraph 8 of the Complaint states a legal conclusion for which no responsive pleading

is required.

9.  Venue lies in this Court pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa]. Certain of the acts, practices, transactions and courses of business alleged in this Complaint occurred within the Northern District of Illinois, and were effected, directly or indirectly, by making use of means or instrumentalities of transportation or communication in interstate commerce, or the mails. For example, four of the defendants reside in the Northern District of Illinois, some of the tips alleged herein were communicated to or from defendants while they were in this district, and some of the trades at issue occurred on the Chicago Board Options Exchange.

**ANSWER:**

Paragraph 9 of the Complaint states a legal conclusion for which no responsive pleading

is required. Weller denies that he resides in the Northern District of Illinois. To the extent that

the remainder of the allegations in paragraph 9 of the Complaint relate to Weller, and require a

response, Weller denies the allegations and demands strict proof thereof. To the extent that the

allegations in paragraph 9 do not relate to Weller, he denies knowledge and information

sufficient to form a belief as to the truth of the allegations, which should be construed as a

specific denial for the purpose of Federal Rule of Civil Procedure 8.

## COMMONLY-USED TRADING TERMS

10.    A "call option" is a type of contract that gives the owner the right, but not the obligation, to buy 100 shares of the underlying security at a specified price within a specified time.  The "strike price" is the price per share at which the option owner can buy the underlying security if he chooses to exercise the option.  The "expiration date" is the last day that an option contract is valid.  If the option owner chooses not to exercise the option (in other words, not to buy 100 shares of the underlying stock), the option expires and becomes worthless, and the owner loses the money he paid to buy the option.  A call option becomes more valuable as the price of the underlying security rises relative to the strike price.  Therefore, a buyer of a call option is betting that the price of the underlying security will rise.

### ANSWER:

Paragraph 10 of the Complaint does not relate to Weller and no responsive pleading is

required.

11.    If the strike price of a call option is below the price at which the stock is trading, the call option is considered "in-the-money" because the exercise of the option would allow the holder to make a profit by purchasing the stock at the strike price and selling it for a higher price. If the strike price is above the price at which the stock is trading, the call option is "out-of-the-money" because the exercise of the option to purchase the stock at the strike price and immediate sale of the sock at a lower price would result in a trading loss.  For a given expiration month, out-of-the-money call options are cheaper to buy than those that are in-the-money.

### ANSWER:

Paragraph 11 of the Complaint does not relate to Weller and no responsive pleading is

required.

## DEFENDANTS

12.    <u>Shane P. Fleming</u>, age 54, is a resident of Minneapolis, Minnesota.  Fleming previously resided in Arizona.  At the time of the relevant conduct, Fleming was a vice president of sales at Life Time.  He currently is working as a consultant in the fitness industry.

### ANSWER:

Paragraph 12 of the Complaint does not relate to Weller and no responsive pleading is

required.  To the extent that the allegations in paragraph 12 of the Complaint relate to Weller,

and require a response, Weller denies the allegations and demands strict proof thereof.  To the

extent that the allegations in paragraph 12 do not relate to Weller, he denies knowledge and information sufficient to form a belief as to the truth of the allegations, which should be construed as a specific denial for the purpose of Federal Rule of Civil Procedure 8.

13.     <u>Bret J. Beshey</u>, age 44, currently resides in Mexico.  Beshey formerly resided in Arizona.  At the time of the conduct alleged herein, Beshey was friends with Fleming, Bonvissuto, Kourtis, Carlucci, and Individual A.  He works in the fitness industry and owns and operates a company that purports to provide services to fitness centers.

**<u>ANSWER:</u>**

Paragraph 13 of the Complaint does not relate to Weller and no responsive pleading is required.  To the extent that the allegations in paragraph 13 of the Complaint relate to Weller, and require a response, Weller denies the allegations and demands strict proof thereof.  To the extent that the allegations in paragraph 13 do not relate to Weller, he denies knowledge and information sufficient to form a belief as to the truth of the allegations, which should be construed as a specific denial for the purpose of Federal Rule of Civil Procedure 8.

14.     <u>Christopher M. Bonvissuto</u>, age 41, is a resident of Buffalo, New York.  He is self-employed in the garbage removal industry.  At the time of the conduct alleged herein, Bonvissuto was friends with Beshey and Individual B, who is Beshey's girlfriend.

**<u>ANSWER:</u>**

Paragraph 14 of the Complaint does not relate to Weller and no responsive pleading is required.  To the extent that the allegations in paragraph 14 of the Complaint relate to Weller, and require a response, Weller denies the allegations and demands strict proof thereof.  To the extent that the allegations in paragraph 14 do not relate to Weller, he denies knowledge and information sufficient to form a belief as to the truth of the allegations, which should be construed as a specific denial for the purpose of Federal Rule of Civil Procedure 8.

15.     Peter A. Kourtis, age 50, is a resident of Niles, Illinois.  Kourtis is employed as a realtor.  At the time of the conduct alleged herein, Kourtis was friends with Beshey, Carlucci, Kandalepas, Mansur, and Weller.

**ANSWER:**

Paragraph 15 of the Complaint does not relate to Weller and no responsive pleading is required.  To the extent that the allegations in paragraph 15 of the Complaint relate to Weller, and require a response, Weller denies the allegations and demands strict proof thereof.  To the extent that the allegations in paragraph 15 do not relate to Weller, he denies knowledge and information sufficient to form a belief as to the truth of the allegations, which should be construed as a specific denial for the purpose of Federal Rule of Civil Procedure 8.

16.     Alexander T. Carlucci, age 51, is a resident of Clarendon Hills, Illinois.  He is employed as a mortgage broker.  At the time of the conduct alleged herein, Carlucci was friends with Beshey, Kourtis, and Mansur.

**ANSWER:**

Paragraph 16 of the Complaint does not relate to Weller and no responsive pleading is required.  To the extent that the allegations in paragraph 16 of the Complaint relate to Weller, and require a response, Weller denies the allegations and demands strict proof thereof.  To the extent that the allegations in paragraph 16 do not relate to Weller, he denies knowledge and information sufficient to form a belief as to the truth of the allegations, which should be construed as a specific denial for the purpose of Federal Rule of Civil Procedure 8.

17.     Dimitri A. Kandalepas, age 28, is a resident of Schaumburg, Illinois.  He is currently employed by a healthcare business located in Illinois.  At the time of the conduct herein, Kandalepas was friends with Kourtis.

**ANSWER:**

Paragraph 17 of the Complaint does not relate to Weller and no responsive pleading is required.  To the extent that the allegations in paragraph 17 of the Complaint relate to Weller,

and require a response, Weller denies the allegations and demands strict proof thereof. To the extent that the allegations in paragraph 17 do not relate to Weller, he denies knowledge and information sufficient to form a belief as to the truth of the allegations, which should be construed as a specific denial for the purpose of Federal Rule of Civil Procedure 8.

18.    Austin C. Mansur, age 45, is a resident of Chicago, Illinois. He is employed by a real estate investment and development company located in Chicago, Illinois. At the time of the conduct alleged herein, Mansur was friends with Kourtis.

**ANSWER:**

Paragraph 18 of the Complaint does not relate to Weller and no responsive pleading is required. To the extent that the allegations in paragraph 18 of the Complaint relate to Weller, and require a response, Weller denies the allegations and demands strict proof thereof. To the extent that the allegations in paragraph 18 do not relate to Weller, he denies knowledge and information sufficient to form a belief as to the truth of the allegations, which should be construed as a specific denial for the purpose of Federal Rule of Civil Procedure 8.

19.    Eric L. Weller, age 52, is a resident of Hermosa Beach, California. His employment status is unknown. At the time of the conduct alleged herein, Weller was friends with Kourtis.

**ANSWER:**

Weller states that he is 53 not 52 at the time of this filing. To the extent of the remander of allegation contained in paragraph 19 of the Complaint, Weller denies the allegations and demands strict proof thereof.

## RELATED PARTIES AND ENTITIES

20.    Individual A is a retiree who resides in Scottsdale, Arizona. At the time of the conduct alleged herein, Individual A was friends with Beshey.

**ANSWER:**

Paragraph 20 of the Complaint does not relate to Weller and no responsive pleading is required. To the extent that the allegations in paragraph 20 of the Complaint relate to Weller, and require a response, Weller denies the allegations and demands strict proof thereof. To the extent that the allegations in paragraph 20 do not relate to Weller, he denies knowledge and information sufficient to form a belief as to the truth of the allegations, which should be construed as a specific denial for the purpose of Federal Rule of Civil Procedure 8.

21. <u>Individual B</u> currently resides in Mexico and is, and at all relevant times has been, in a romantic relationship with Beshey. Her employment status is unknown. At the time of the conduct alleged herein, Individual B was friends with Bonvissuto. Individual B allowed Beshey to use at least one bank account in her name to receive portions of the illicit trading profits obtained by reason of the unlawful conduct alleged in this Complaint.

**<u>ANSWER:</u>**

Paragraph 21 of the Complaint does not relate to Weller and no responsive pleading is required. To the extent that the allegations in paragraph 21 of the Complaint relate to Weller, and require a response, Weller denies the allegations and demands strict proof thereof. To the extent that the allegations in paragraph 21 do not relate to Weller, he denies knowledge and information sufficient to form a belief as to the truth of the allegations, which should be construed as a specific denial for the purpose of Federal Rule of Civil Procedure 8.

22. <u>Life Time</u> is a Minnesota corporation headquartered in Chanhassen, Minnesota. Prior to the company filing a Form 15-12B on June 25, 2015, Life Time's common stock was registered with the Commission pursuant to Section 12(b) of the Exchange Act. During the time period alleged herein, Life Time's common stock was listed on the New York Stock Exchange ("NYSE") and its options were traded on the Chicago Board Options Exchange ("CBOE") located in Chicago, Illinois and on other U.S. options exchanges. Some of the Life Time call options defendants bought, as alleged herein, were purchased on the CBOE. During the relevant period, Life Time filed periodic reports, including Forms 10-K and 10-Q, with the Commission pursuant to Section 13(a) of the Exchange Act and related rules thereunder.

**ANSWER:**

Paragraph 22 of the Complaint does not relate to Weller and no responsive pleading is required. To the extent that the allegations in paragraph 22 of the Complaint relate to Weller, and require a response, Weller denies the allegations and demands strict proof thereof. To the extent that the allegations in paragraph 22 do not relate to Weller, he denies knowledge and information sufficient to form a belief as to the truth of the allegations, which should be construed as a specific denial for the purpose of Federal Rule of Civil Procedure 8.

## FACTS

**A.    Life Time Acquisition and Fleming's Knowledge of the Deal**

23.    On March 16, 2015, Life Time issued a press release announcing that it would be acquired and taken private by an investor group. Life Time began to receive unsolicited acquisition inquiries in the summer of 2014 and continued to engage in discussions with potential buyers up to the March 2015 announcement. The acquisition closed on June 10, 2015, at which time Life Time requested that its shares be delisted from the NYSE.

**ANSWER:**

Paragraph 23 of the Complaint does not relate to Weller and no responsive pleading is required. To the extent that the allegations in paragraph 23 of the Complaint relate to Weller, and require a response, Weller denies the allegations and demands strict proof thereof. To the extent that the allegations in paragraph 23 do not relate to Weller, he denies knowledge and information sufficient to form a belief as to the truth of the allegations, which should be construed as a specific denial for the purpose of Federal Rule of Civil Procedure 8.

24.    News of Life Time's likely acquisition was first made public after the close of the market on March 5, 2015, when the Wall Street Journal published an article reporting that Life Time was in advanced talks with two private equity firms. Life Time stock closed at $57.67 per share on March 5, 2015, before the article was published. The next morning, March 6, 2015, Life Time stock opened at $64.80 per share—an increase of 11% over the prior day's closing price. The share price reached a high of $69.13 per share on March 6, 2015 and closed at $66.32—an increase of 15% over the March 5, 2015 closing price.

**ANSWER:**

Paragraph 24 of the Complaint does not relate to Weller and no responsive pleading is required. To the extent that the allegations in paragraph 24 of the Complaint relate to Weller, and require a response, Weller denies the allegations and demands strict proof thereof. To the extent that the allegations in paragraph 24 do not relate to Weller, he denies knowledge and information sufficient to form a belief as to the truth of the allegations, which should be construed as a specific denial for the purpose of Federal Rule of Civil Procedure 8.

25. Fleming, then a vice president of sales at Life Time, learned about the acquisition negotiations on or before February 23, 2015, when he met with an in-house lawyer at Life Time to discuss issues related to the acquisition. At that meeting, Life Time's in-house lawyer reminded Fleming of Life Time's policies prohibiting insider trading and told Fleming that he could not discuss the upcoming acquisition with anyone outside of Life Time and could not trade on the information.

**ANSWER:**

Paragraph 25 of the Complaint does not relate to Weller and no responsive pleading is required. To the extent that the allegations in paragraph 25 of the Complaint relate to Weller, and require a response, Weller denies the allegations and demands strict proof thereof. To the extent that the allegations in paragraph 25 do not relate to Weller, he denies knowledge and information sufficient to form a belief as to the truth of the allegations, which should be construed as a specific denial for the purpose of Federal Rule of Civil Procedure 8.

26. At all times relevant to the allegations in this Complaint, Fleming owed fiduciary or similar duties of trust and confidence to Life Time and its shareholders that prohibited him from disclosing to third parties material nonpublic information concerning Life Time, or from trading on such information. Fleming knew of, understood, and agreed to abide by Life Time's Insider Trading Policy, which expressly prohibited Fleming from purchasing or selling Life Time securities on the basis of material nonpublic information concerning the company, or from tipping such information to others. Life Time's Insider Trading Policy defined "material" information to include, among other things, information concerning "a significant merger or acquisition involving the Company."

**ANSWER:**

Paragraph 26 of the Complaint does not relate to Weller and no responsive pleading is required. To the extent that the allegations in paragraph 26 of the Complaint relate to Weller, and require a response, Weller denies the allegations and demands strict proof thereof. To the extent that the allegations in paragraph 26 do not relate to Weller, he denies knowledge and information sufficient to form a belief as to the truth of the allegations, which should be construed as a specific denial for the purpose of Federal Rule of Civil Procedure 8. Weller further states that definatitions of certain terms contained within certain documents speak for themselves.

**B.** **Fleming Tips Beshey About Life Time's Acquisition**

27. On February 23, 2015, at approximately 4:55 pm CT, after learning about the acquisition negotiations, Fleming spoke with Beshey, his long-time friend and business partner, via telephone for approximately 7.5 minutes. During the call, Fleming tipped Beshey that Life Time was going to be acquired and that the acquisition would cause the price of Life Time's stock to increase to the mid-$60s range per share. The two men engaged in additional phone conversations over the next few days. Based on their conversations during those calls, Fleming understood that Beshey was going to use the information to make a profit by trading or recruiting others to trade Life Time securities and that Beshey would share the profits with Fleming.

**ANSWER:**

Paragraph 27 of the Complaint does not relate to Weller and no responsive pleading is required. To the extent that the allegations in paragraph 27 of the Complaint relate to Weller, and require a response, Weller denies the allegations and demands strict proof thereof. To the extent that the allegations in paragraph 27 do not relate to Weller, he denies knowledge and information sufficient to form a belief as to the truth of the allegations, which should be construed as a specific denial for the purpose of Federal Rule of Civil Procedure 8.

28. On February 24, 2015, Beshey called a brokerage firm and asked numerous questions about purchasing options on Life Time stock. Beshey inquired about various strike prices and expiration dates and said that he thought Life Time's share price was going to increase.

**ANSWER:**

Paragraph 28 of the Complaint does not relate to Weller and no responsive pleading is required. To the extent that the allegations in paragraph 28 of the Complaint relate to Weller, and require a response, Weller denies the allegations and demands strict proof thereof. To the extent that the allegations in paragraph 18 do not relate to Weller, he denies knowledge and information sufficient to form a belief as to the truth of the allegations, which should be construed as a specific denial for the purpose of Federal Rule of Civil Procedure 8.

29. For example, on February 24, 2015, at approximately 6:14 pm CT, Beshey called a brokerage firm and posed the following question:

> If you are trading, and I've heard of, uh, companies that are trading and eventually they sometimes are bought and they go private and the company will buyout all of the existing stock that is outstanding, you know. So how does that work? Like, say for example if I had, uh, if I had just bought options on a stock, if I bought, uh, options on a stock, and say I bought the options, like say I bought March 25s on it. . . . If I bought calls, for the March 25 and say that went up to, say the company, say the stock was trading at like 20, uh, say it was trading at 24 and my options are at 25, and say the company gets bought for 30, then do they cover the outstanding options?

**ANSWER:**

Paragraph 29 of the Complaint does not relate to Weller and no responsive pleading is required. To the extent that the allegations in paragraph 29 of the Complaint relate to Weller, and require a response, Weller denies the allegations and demands strict proof thereof. To the extent that the allegations in paragraph 29 do not relate to Weller, he denies knowledge and information sufficient to form a belief as to the truth of the allegations, which should be construed as a specific denial for the purpose of Federal Rule of Civil Procedure 8.

30. As discussed in more detail below, Beshey subsequently tipped the material nonpublic information he learned from Fleming to Bonvissuto, Kourtis, and Individual A.

**ANSWER:**

Paragraph 30 of the Complaint does not relate to Weller and no responsive pleading is required. To the extent that the allegations in paragraph 30 of the Complaint relate to Weller, and require a response, Weller denies the allegations and demands strict proof thereof. To the extent that the allegations in paragraph 30 do not relate to Weller, he denies knowledge and information sufficient to form a belief as to the truth of the allegations, which should be construed as a specific denial for the purpose of Federal Rule of Civil Procedure 8.

**C.     Beshey Tips Bonvissuto**

31.     At approximately 12:00 pm CT on February 24, 2015, Beshey called Bonvissuto and tipped him that Life Time was going to be bought and taken private. Beshey also told Bonvissuto that he learned this information from his friend who worked as an executive at Life Time. Beshey and Bonvissuto agreed that Bonvissuto would use his trading accounts to purchase Life Time stock options and that they would share the profits.

**ANSWER:**

Paragraph 31 of the Complaint does not relate to Weller and no responsive pleading is required. To the extent that the allegations in paragraph 31 of the Complaint relate to Weller, and require a response, Weller denies the allegations and demands strict proof thereof. To the extent that the allegations in paragraph 31 do not relate to Weller, he denies knowledge and information sufficient to form a belief as to the truth of the allegations, which should be construed as a specific denial for the purpose of Federal Rule of Civil Procedure 8.

32.     On February 24, 2014, Bonvissuto and Beshey called brokers at two different large retail brokerage firms and, in recorded phone calls, asked the brokers questions about purchasing Life Time call options. For example,

- At 12:09 pm CT, Bonvissuto called Brokerage Firm 1, where he had an account, to inquire whether he had approval to trade options.

- At 12:18 pm CT, Bonvissuto called Brokerage Firm 1, said he might "do" $5,000 in Life Time options, and asked questions about strike prices on the options and how options work.

- At 12:24 pm CT, Beshey called Brokerage Firm 2, where he did not have an account, and asked questions about Life Time options. He said he wanted to buy about $4,000 worth of call options.

- At 12:45 pm CT, Bonvissuto called Brokerage Firm 1 to place an order. When he placed his order, he stated "*We* only want to buy …." (emphasis added). Brokerage Firm 1 asked if he wanted to place a market or limit order. Bonvissuto said he would call back.

**ANSWER:**

Paragraph 32 of the Complaint does not relate to Weller and no responsive pleading is required. To the extent that the allegations in paragraph 32 of the Complaint relate to Weller, and require a response, Weller denies the allegations and demands strict proof thereof. To the extent that the allegations in paragraph 32 do not relate to Weller, he denies knowledge and information sufficient to form a belief as to the truth of the allegations, which should be construed as a specific denial for the purpose of Federal Rule of Civil Procedure 8.

33.    After each of the above calls, Bonvissuto and Beshey called each other to discuss what they learned and their plan for purchasing Life Time call options using the inside information about Life Time's acquisition.

**ANSWER:**

Paragraph 33 of the Complaint does not relate to Weller and no responsive pleading is required. To the extent that the allegations in paragraph 33 of the Complaint relate to Weller, and require a response, Weller denies the allegations and demands strict proof thereof. To the extent that the allegations in paragraph 33 do not relate to Weller, he denies knowledge and information sufficient to form a belief as to the truth of the allegations, which should be construed as a specific denial for the purpose of Federal Rule of Civil Procedure 8.

34.    On February 25, 2015 and February 26, 2015, Bonvissuto purchased 144 call option contracts to buy Life Time securities at a strike price of $65 per share and a contract expiration date of March 20, 2015 (*i.e.*, "144 LTM March 20, 2015 $65 call options"). Bonvissuto had never before purchased Life Time securities or the options of any security.

**ANSWER:**

Paragraph 34 of the Complaint does not relate to Weller and no responsive pleading is required. To the extent that the allegations in paragraph 34 of the Complaint relate to Weller, and require a response, Weller denies the allegations and demands strict proof thereof. To the extent that the allegations in paragraph 34 do not relate to Weller, he denies knowledge and information sufficient to form a belief as to the truth of the allegations, which should be construed as a specific denial for the purpose of Federal Rule of Civil Procedure 8

**D.**     **Beshey Tips Individual A**

35.     After speaking with Fleming on February 23, 2015, Beshey also communicated with his friend Individual A and told him that he should buy call options because Life Time's share price would increase.

**ANSWER:**

Paragraph 35 of the Complaint does not relate to Weller and no responsive pleading is required. To the extent that the allegations in paragraph 35 of the Complaint relate to Weller, and require a response, Weller denies the allegations and demands strict proof thereof. To the extent that the allegations in paragraph 35 do not relate to Weller, he denies knowledge and information sufficient to form a belief as to the truth of the allegations, which should be construed as a specific denial for the purpose of Federal Rule of Civil Procedure 8.

36.     On February 27, 2015—after speaking with Beshey—Individual A purchased 200 LTM March 20, 2015 $65 call options.

**ANSWER:**

Paragraph 36 of the Complaint does not relate to Weller and no responsive pleading is required. To the extent that the allegations in paragraph 36 of the Complaint relate to Weller, and require a response, Weller denies the allegations and demands strict proof thereof. To the extent that the allegations in paragraph 36 do not relate to Weller, he denies knowledge and

information sufficient to form a belief as to the truth of the allegations, which should be construed as a specific denial for the purpose of Federal Rule of Civil Procedure 8.

**E.**     **Beshey Tips Kourtis**

37.     Beshey also tipped Kourtis with the information he received from Fleming about Life Time's upcoming acquisition.  Specifically, the two men spoke on the phone at least twenty times from the evening of February 23, 2015 through February 25, 2015.

**ANSWER:**

Paragraph 37 of the Complaint does not relate to Weller and no responsive pleading is required.  To the extent that the allegations in paragraph 37 of the Complaint relate to Weller, and require a response, Weller denies the allegations and demands strict proof thereof.  To the extent that the allegations in paragraph 37 do not relate to Weller, he denies knowledge and information sufficient to form a belief as to the truth of the allegations, which should be construed as a specific denial for the purpose of Federal Rule of Civil Procedure 8.

38.     During the course of these calls, Beshey tipped Kourtis that Life Time would be purchased and taken private.  Beshey told Kourtis that he learned this information from his friend and business partner, Shane Fleming, who was employed in management at Life Time.  Beshey also told Kourtis that Fleming said the buyer would pay approximately $62 to $65 per Life Time share.

**ANSWER:**

Paragraph 38 of the Complaint does not relate to Weller and no responsive pleading is required.  To the extent that the allegations in paragraph 38 of the Complaint relate to Weller, and require a response, Weller denies the allegations and demands strict proof thereof.  To the extent that the allegations in paragraph 38 do not relate to Weller, he denies knowledge and information sufficient to form a belief as to the truth of the allegations, which should be construed as a specific denial for the purpose of Federal Rule of Civil Procedure 8.

39.     During the telephone calls alleged above, Beshey and Kourtis agreed that Kourtis would use his trading accounts to purchase Life Time options and that they would share the profits.  They also agreed that Kourtis could share the inside information about Life Time with some of Kourtis's friends.  Beshey told Kourtis they needed to act fast because news about the acquisition would become public soon.

**ANSWER:**

Paragraph 39 of the Complaint does not relate to Weller and no responsive pleading is required.  To the extent that the allegations in paragraph 39 of the Complaint relate to Weller, and require a response, Weller denies the allegations and demands strict proof thereof.  To the extent that the allegations in paragraph 39 do not relate to Weller, he denies knowledge and information sufficient to form a belief as to the truth of the allegations, which should be construed as a specific denial for the purpose of Federal Rule of Civil Procedure 8.

40.     On February 25, 2015 and February 26, 2015, after being tipped by Beshey about Life Time's acquisition, Kourtis purchased 300 LTM March 20, 2015 $65 call options.  Kourtis had never before purchased Life Time securities or the options of any security.

**ANSWER:**

Paragraph 40 of the Complaint does not relate to Weller and no responsive pleading is required.  To the extent that the allegations in paragraph 40 of the Complaint relate to Weller, and require a response, Weller denies the allegations and demands strict proof thereof.  To the extent that the allegations in paragraph 40 do not relate to Weller, he denies knowledge and information sufficient to form a belief as to the truth of the allegations, which should be construed as a specific denial for the purpose of Federal Rule of Civil Procedure 8.

F.     **Kourtis Tips Carlucci, Kandalepas, Mansur and Weller**

41.     After speaking with Beshey, Kourtis contacted Carlucci, Kandalepas, Mansur, and Weller.  Kourtis tipped these individuals with the material nonpublic information that he received from Beshey about Life Time's acquisition.

**ANSWER:**

To the extent that the allegations in paragraph 41 of the Complaint relate to Weller, and require a response, Weller denies the allegations and demands strict proof thereof. To the extent that the allegations in paragraph 41 do not relate to Weller, he denies knowledge and information sufficient to form a belief as to the truth of the allegations, which should be construed as a specific denial for the purpose of Federal Rule of Civil Procedure 8.

42.     During the course of his communications, Kourtis tipped all four men that Life Time would be acquired and that the share price would go up. Kourtis told all four men to keep this information to themselves. Kourtis also asked Carlucci, Mansur, and Weller to give him a portion of any proceeds they made from trading on the information, which they each agreed to do.

**ANSWER:**

To the extent that the allegations in paragraph 42 of the Complaint relate to Weller, and require a response, Weller denies the allegations and demands strict proof thereof. To the extent that the allegations in paragraph 42 do not relate to Weller, he denies knowledge and information sufficient to form a belief as to the truth of the allegations, which should be construed as a specific denial for the purpose of Federal Rule of Civil Procedure 8.

Carlucci

43.     In late February 2015, shortly after learning about Life Time's impending acquisition from Beshey, Kourtis called Carlucci, a close friend he had known for approximately 15 years, and asked to meet him in person. When they met, Kourtis told Carlucci: (a) that Beshey had called him with a stock tip, (b) that Beshey had a long-time friend who worked in a high-level position at Life Time, (c) that the Life Time insider said Life Time was going to be sold soon to a private company, and (d) that the buyer was going to pay approximately $62 to $65 per share of Life Time stock.

**ANSWER:**

Paragraph 43 of the Complaint does not relate to Weller and no responsive pleading is required. To the extent that the allegations in paragraph 43 of the Complaint relate to Weller, and require a response, Weller denies the allegations and demands strict proof thereof. To the extent that the allegations in paragraph 43 do not relate to Weller, he denies knowledge and

information sufficient to form a belief as to the truth of the allegations, which should be construed as a specific denial for the purpose of Federal Rule of Civil Procedure 8.

44.     At this meeting, Kourtis also told Carlucci that Kourtis was going to buy out-of-the-money Life Time options with a strike price of $65 per share and an expiration date of March 20, 2015.  He also asked Carlucci for a share of Carlucci's profits if Carlucci traded Life Time securities using the inside information and made money.  Carlucci agreed to pay Kourtis.

**ANSWER:**

Paragraph 44 of the Complaint does not relate to Weller and no responsive pleading is required.  To the extent that the allegations in paragraph 44 of the Complaint relate to Weller, and require a response, Weller denies the allegations and demands strict proof thereof.  To the extent that the allegations in paragraph 44 do not relate to Weller, he denies knowledge and information sufficient to form a belief as to the truth of the allegations, which should be construed as a specific denial for the purpose of Federal Rule of Civil Procedure 8.

45.     On March 2, 2015—after being tipped by Kourtis and learning about the Life Time acquisition—Carlucci purchased 15 LTM March 20, 2015 $60 call options and 25 LTM March 20, 2015 $65 call options.  Carlucci had never before purchased Life Time securities or the options of any security.

**ANSWER:**

Paragraph 45 of the Complaint does not relate to Weller and no responsive pleading is required.  To the extent that the allegations in paragraph 45 of the Complaint relate to Weller, and require a response, Weller denies the allegations and demands strict proof thereof.  To the extent that the allegations in paragraph 45 do not relate to Weller, he denies knowledge and information sufficient to form a belief as to the truth of the allegations, which should be construed as a specific denial for the purpose of Federal Rule of Civil Procedure 8.

Kandalepas

46.     In late February 2015, shortly after learning about Life Time's impending acquisition from Beshey, Kourtis met with his friend Kandalepas in Schaumburg, Illinois.

Kourtis and Kandalepas had known each other for many years, and Kourtis had invested in several businesses run by Kandalepas's father.

**ANSWER:**

Paragraph 46 of the Complaint does not relate to Weller and no responsive pleading is required. To the extent that the allegations in paragraph 46 of the Complaint relate to Weller, and require a response, Weller denies the allegations and demands strict proof thereof. To the extent that the allegations in paragraph 46 do not relate to Weller, he denies knowledge and information sufficient to form a belief as to the truth of the allegations, which should be construed as a specific denial for the purpose of Federal Rule of Civil Procedure 8.

47. During their meeting, Kourtis told Kandalepas the inside information about Life Time's impending acquisition that he received from Beshey, including: (a) that he had a friend who was long-time friends with someone who worked in a high-level position at Life Time; (b) that the Life Time insider said Life Time was going to be bought by a private company within the next month; and (c) that Life Time's stock price would go up as a result of the acquisition.

**ANSWER:**

Paragraph 47 of the Complaint does not relate to Weller and no responsive pleading is required. To the extent that the allegations in paragraph 47 of the Complaint relate to Weller, and require a response, Weller denies the allegations and demands strict proof thereof. To the extent that the allegations in paragraph 47 do not relate to Weller, he denies knowledge and information sufficient to form a belief as to the truth of the allegations, which should be construed as a specific denial for the purpose of Federal Rule of Civil Procedure 8.

48. At the same meeting, Kourtis also told Kandalepas that Kourtis was going to buy out-of-the-money Life Time options with a strike price of $65 per share and an expiration date of March 20, 2015. He encouraged Kandalepas to do the same.

**ANSWER:**

Paragraph 48 of the Complaint does not relate to Weller and no responsive pleading is required. To the extent that the allegations in paragraph 48 of the Complaint relate to Weller,

22

and require a response, Weller denies the allegations and demands strict proof thereof. To the extent that the allegations in paragraph 48 do not relate to Weller, he denies knowledge and information sufficient to form a belief as to the truth of the allegations, which should be construed as a specific denial for the purpose of Federal Rule of Civil Procedure 8.

49.     On March 3, 2015—after being tipped by Kourtis about the Life Time acquisition—Kandalepas purchased 140 LTM March 20, 2015 $65 call options. Kandalepas had never before purchased Life Time securities or the options of any security.

**ANSWER:**

Paragraph 49 of the Complaint does not relate to Weller and no responsive pleading is required. To the extent that the allegations in paragraph 49 of the Complaint relate to Weller, and require a response, Weller denies the allegations and demands strict proof thereof. To the extent that the allegations in paragraph 49 do not relate to Weller, he denies knowledge and information sufficient to form a belief as to the truth of the allegations, which should be construed as a specific denial for the purpose of Federal Rule of Civil Procedure 8.

Mansur

50.     In or about late February 2015, shortly after learning about Life Time's impending acquisition from Beshey, Kourtis met with his friend Mansur. Kourtis and Mansur had been friends for at least 10 years.

**ANSWER:**

Paragraph 50 of the Complaint does not relate to Weller and no responsive pleading is required. To the extent that the allegations in paragraph 50 of the Complaint relate to Weller, and require a response, Weller denies the allegations and demands strict proof thereof. To the extent that the allegations in paragraph 50 do not relate to Weller, he denies knowledge and information sufficient to form a belief as to the truth of the allegations, which should be construed as a specific denial for the purpose of Federal Rule of Civil Procedure 8.

51.     During their meeting, Kourtis tipped Mansur with inside information about Life Time's impending acquisition that Kourtis had received from Beshey.  Mansur knew Beshey from a previous meeting.  Kourtis told Mansur: (a) that Beshey had a long-time friend who worked in a high-level position at Life Time; (b) that the Life Time insider told Beshey that Life Time was going to be sold very soon to a private company; and (c) the buyer was going to pay approximately $62 to $65 per share for Life Time's stock.

**ANSWER:**

Paragraph 51 of the Complaint does not relate to Weller and no responsive pleading is

required.  To the extent that the allegations in paragraph 51 of the Complaint relate to Weller,

and require a response, Weller denies the allegations and demands strict proof thereof.  To the

extent that the allegations in paragraph 51 do not relate to Weller, he denies knowledge and

information sufficient to form a belief as to the truth of the allegations, which should be

construed as a specific denial for the purpose of Federal Rule of Civil Procedure 8.

52.     At this meeting, Kourtis also told Mansur he was going to invest in Life Time. Kourtis asked Mansur to provide a kickback if Mansur made a profit trading on the inside information about Life Time's acquisition.  Mansur told Kourtis he was going to trade and agreed to pay Kourtis some money if he profited from the trades.

**ANSWER:**

Paragraph 52 of the Complaint does not relate to Weller and no responsive pleading is

required.  To the extent that the allegations in paragraph 52 of the Complaint relate to Weller,

and require a response, Weller denies the allegations and demands strict proof thereof.  To the

extent that the allegations in paragraph 52 do not relate to Weller, he denies knowledge and

information sufficient to form a belief as to the truth of the allegations, which should be

construed as a specific denial for the purpose of Federal Rule of Civil Procedure 8.

53.     During their conversation, Mansur warned Kourtis they needed to be careful because they were involved in insider trading and they could get in trouble if caught.

**ANSWER:**

Paragraph 53 of the Complaint does not relate to Weller and no responsive pleading is required. To the extent that the allegations in paragraph 53 of the Complaint relate to Weller, and require a response, Weller denies the allegations and demands strict proof thereof. To the extent that the allegations in paragraph 53 do not relate to Weller, he denies knowledge and information sufficient to form a belief as to the truth of the allegations, which should be construed as a specific denial for the purpose of Federal Rule of Civil Procedure 8.

54.     Between February 26, 2015 and March 5, 2015—after being tipped by Kourtis about the upcoming Life Time acquisition—Mansur purchased 75 LTM March 20, 2015 $60 call options, 225 LTM March 20, 2015 $65 call options, 50 LTM March 20, 2015 $70 call options, and 115 LTM April 17, 2015 $65 call options. Mansur also bought 250 shares of Life Time on February 26, 2015. Mansur had never before purchased options or Life Time securities.

**ANSWER:**

Paragraph 54 of the Complaint does not relate to Weller and no responsive pleading is required. To the extent that the allegations in paragraph 54 of the Complaint relate to Weller, and require a response, Weller denies the allegations and demands strict proof thereof. To the extent that the allegations in paragraph 54 do not relate to Weller, he denies knowledge and information sufficient to form a belief as to the truth of the allegations, which should be construed as a specific denial for the purpose of Federal Rule of Civil Procedure 8.

Weller

55.     In or about late February 2015, shortly after learning about Life Time's impending acquisition from Beshey, Kourtis tipped his friend Eric Weller with the information during a telephone call. Kourtis and Weller have been friends since the 1980s.

**ANSWER:**

To the extent that the allegations in paragraph 55 of the Complaint relate to Weller, and require a response, Weller denies the allegations and demands strict proof thereof. To the extent that the allegations in paragraph 55 do not relate to Weller, he denies knowledge and information

25

sufficient to form a belief as to the truth of the allegations, which should be construed as a

specific denial for the purpose of Federal Rule of Civil Procedure 8.

56.    During a telephone call in late February 2015, Kourtis told Weller the inside information about Life Time's impending acquisition he had received from Beshey.  Kourtis told Weller: (a) that Kourtis's friend Beshey had a long-time friend who was a high-level Life Time employee, (b) that the Life Time insider told Beshey that Life Time was going to be sold very soon to a private company, and (c) that the buyer was going to pay approximately $62 to $65 per share for Life Time's stock.

**ANSWER:**

To the extent that the allegations in paragraph 56 of the Complaint relate to Weller, and

require a response, Weller denies the allegations and demands strict proof thereof.

57.    During this telephone call, Kourtis also told Weller he was going to buy Life Time options with a strike price of $65 per share and an expiration date of March 20, 2015. Kourtis also asked Weller to provide a kickback if Weller made money trading on the information.  Weller agreed to share some of his trading profits with Kourtis.

**ANSWER:**

To the extent that the allegations in paragraph 57 of the Complaint relate to Weller, and

require a response, Weller denies the allegations and demands strict proof thereof.

58.    Between February 25, 2015 and March 5, 2015—after being tipped by Kourtis about the Life Time acquisition—Weller purchased 401 LTM March 20, 2015 $60 call options and 609 LTM March 20, 2015 $65 call options.
**ANSWER:**

Weller denies being tipped by Kourtis.  Weller admits that he  purchased 401 LTM

March 20, 2015 $60 call options and 609 LTM March 20, 2015 $65 call options.  Weller further

states that he also purchased $70 dollare call options.

**G.    Nature of the Defendants' Call Options**

59.    All of the call options purchased by Bonvissuto, Kourtis, Carlucci, Kandalepas, and Individual A were out-of-the-money call options set to expire in 23 or fewer days from the date of purchase.  Approximately 98% of those options had a strike price that was more than $5 above the then-current trading price of Life Time stock.

**ANSWER:**

Paragraph 59 of the Complaint does not relate to Weller and no responsive pleading is required. To the extent that the allegations in paragraph 59 of the Complaint relate to Weller, and require a response, Weller denies the allegations and demands strict proof thereof. To the extent that the allegations in paragraph 59 do not relate to Weller, he denies knowledge and information sufficient to form a belief as to the truth of the allegations, which should be construed as a specific denial for the purpose of Federal Rule of Civil Procedure 8.

60. At least 90% of the call options purchased by Mansur were out-of-the-money call options. The majority of those options had a strike price that was more than $5 above the then-current trading price of Life Time stock and were set to expire in 23 or fewer days from the date of purchase.

**ANSWER:**

Paragraph 60 of the Complaint does not relate to Weller and no responsive pleading is required. To the extent that the allegations in paragraph 60 of the Complaint relate to Weller, and require a response, Weller denies the allegations and demands strict proof thereof. To the extent that the allegations in paragraph 60 do not relate to Weller, he denies knowledge and information sufficient to form a belief as to the truth of the allegations, which should be construed as a specific denial for the purpose of Federal Rule of Civil Procedure 8.

61. At least 80% of the call options purchased by Weller were out-of-the-money call options set to expire in 23 or fewer days from the date of purchase. Approximately 75% of those options had a strike price that was more than $5 above the then-current trading price of Life Time stock.

**ANSWER:**

To the extent that the allegations in paragraph 61 of the Complaint relate to Weller, and require a response, Weller denies the allegations and demands strict proof thereof

**H.      The Defendants Sell Their Options and Send Kickbacks Up the Tipping Chain**

62. On March 5, 2015, after the close of trading, the Wall Street Journal published an article reporting that Life Time was in advanced acquisition negotiations with two private equity

27

groups. On March 6, 2016, Life Time's share price opened at $64.80, an 11% increase over the prior day's closing price of $57.67.

**ANSWER:**

Paragraph 62 of the Complaint does not relate to Weller and no responsive pleading is required. To the extent that the allegations in paragraph 62 of the Complaint relate to Weller, he admits the allegation contained herein.

63.     On March 16, 2015, prior to the opening of trading, Life Time issued a press release announcing the acquisition and including more information than was in the March 5, 2015 Wall Street Journal article. The press release caused the share price to further increase. Specifically, Life Time stock closed at $67.20 per share on March 15 and opened on March 16 at $70.65 per share. The share price reached a high of $70.90 per share on March 16, 2015 and closed at $70.68.

**ANSWER:**

Paragraph 63 of the Complaint does not relate to Weller and no responsive pleading is required. To the extent that the allegations in paragraph 63 of the Complaint relate to Weller, he admits the allegation contained herein.

64.     As detailed below, Bonvissuto, Carlucci, Kandalepas, Kourtis, Mansur, Weller and Individual A sold the majority of their call options on March 6, 2015 and sold their remaining positions on or before the date of the official merger announcement on March 16, 2015. The defendants realized total trading proceeds of approximately $866,629. In addition, Individual A realized trading profits of approximately $48,492.

**ANSWER:**

To the extent that the allegations in paragraph 64 of the Complaint relate to Weller, and require a response, Weller denies the allegations and demands strict proof thereof. To the extent that the allegations in paragraph 64 do not relate to Weller, he denies knowledge and information sufficient to form a belief as to the truth of the allegations, which should be construed as a specific denial for the purpose of Federal Rule of Civil Procedure 8.

65.     Bonvissuto sold 87 LTM call options on March 6, 2015.  He sold his remaining 57 LTM call options on March 9, 2015 and March 10, 2015.  In total, he realized approximate profits of $33,677.  Bonvissuto sent approximately $11,300 of his trading proceeds to Beshey, via the bank account of Individual B, as a kickback for sharing the inside information about Life Time.

**ANSWER:**

Paragraph 65 of the Complaint does not relate to Weller and no responsive pleading is required.  To the extent that the allegations in paragraph 65 of the Complaint relate to Weller, and require a response, Weller denies the allegations and demands strict proof thereof.  To the extent that the allegations in paragraph 65 do not relate to Weller, he denies knowledge and information sufficient to form a belief as to the truth of the allegations, which should be construed as a specific denial for the purpose of Federal Rule of Civil Procedure 8.

66.     Kourtis sold 300 LTM call options on March 6, 2015, for approximate profits of $92,744.  Kourtis sent at least $6,000 of his trading proceeds to Beshey, via the bank account of Individual B, as a kickback for sharing the inside information about Life Time.  Kourtis also paid at least $2,000 in cash to Beshey as a kickback for sharing the inside information.

**ANSWER:**

Paragraph 66 of the Complaint does not relate to Weller and no responsive pleading is required.  To the extent that the allegations in paragraph 66 of the Complaint relate to Weller, and require a response, Weller denies the allegations and demands strict proof thereof.  To the extent that the allegations in paragraph 66 do not relate to Weller, he denies knowledge and information sufficient to form a belief as to the truth of the allegations, which should be construed as a specific denial for the purpose of Federal Rule of Civil Procedure 8.

67.     Individual A sold 200 LTM call options on March 6, 2015, for approximate profits of $48,492.  After realizing these profits, Individual A gave Beshey approximately $12,000 in the form of a purported loan, which Beshey has not repaid.

**ANSWER:**

Paragraph 67 of the Complaint does not relate to Weller and no responsive pleading is required. To the extent that the allegations in paragraph 67 of the Complaint relate to Weller, and require a response, Weller denies the allegations and demands strict proof thereof. To the extent that the allegations in paragraph 67 do not relate to Weller, he denies knowledge and information sufficient to form a belief as to the truth of the allegations, which should be construed as a specific denial for the purpose of Federal Rule of Civil Procedure 8.

68.     After receiving payments from Bonvissuto, Kourtis, and Individual A, Beshey shared these ill-gotten gains with Fleming. Specifically, Beshey paid Fleming approximately $10,000 in cash as a kickback for sharing the inside information about Life Time.

**ANSWER:**

Paragraph 68 of the Complaint does not relate to Weller and no responsive pleading is required. To the extent that the allegations in paragraph 68 of the Complaint relate to Weller, and require a response, Weller denies the allegations and demands strict proof thereof. To the extent that the allegations in paragraph 68 do not relate to Weller, he denies knowledge and information sufficient to form a belief as to the truth of the allegations, which should be construed as a specific denial for the purpose of Federal Rule of Civil Procedure 8.

69.     Carlucci sold 40 LTM call options on March 6, 2015, for approximate profits of $14,492. After realizing these profits, Carlucci paid approximately $900 in cash to Kourtis as a kickback for sharing the information about Life Time.

**ANSWER:**

Paragraph 69 of the Complaint does not relate to Weller and no responsive pleading is required. To the extent that the allegations in paragraph 69 of the Complaint relate to Weller, and require a response, Weller denies the allegations and demands strict proof thereof. To the extent that the allegations in paragraph 69 do not relate to Weller, he denies knowledge and

information sufficient to form a belief as to the truth of the allegations, which should be construed as a specific denial for the purpose of Federal Rule of Civil Procedure 8.

70.     Kandalepas sold 140 LTM call options on March 6, 2015, for approximate profits of $37,613.

**ANSWER:**

Paragraph 70 of the Complaint does not relate to Weller and no responsive pleading is required.  To the extent that the allegations in paragraph 70 of the Complaint relate to Weller, and require a response, Weller denies the allegations and demands strict proof thereof.  To the extent that the allegations in paragraph 70 do not relate to Weller, he denies knowledge and information sufficient to form a belief as to the truth of the allegations, which should be construed as a specific denial for the purpose of Federal Rule of Civil Procedure 8.

71.     Mansur sold 465 LTM call options on March 6, 2015, for approximate profits of $130,659.  Mansur also sold 250 shares of Life Time stock on March 16, 2015, for approximate profits of $2,667.  After realizing these profits, Mansur paid approximately $1,500 in cash to Kourtis as a kickback for sharing the information about Life Time.

**ANSWER:**

Paragraph 71 of the Complaint does not relate to Weller and no responsive pleading is required.  To the extent that the allegations in paragraph 71 of the Complaint relate to Weller, and require a response, Weller denies the allegations and demands strict proof thereof.  To the extent that the allegations in paragraph 71 do not relate to Weller, he denies knowledge and information sufficient to form a belief as to the truth of the allegations, which should be construed as a specific denial for the purpose of Federal Rule of Civil Procedure 8.

72.     Weller sold 708 LTM call options on March 6, 2015 and 1 LTM call option on March 5, 2015.[1]  He sold his remaining 301 LTM call options on March 16, 2015.  In total, he realized approximate profits of $554,778.  After realizing these profits, Weller gave Kourtis at

---

[1] Weller sold 1 LTM March 20, 2015 $60 call option on the morning of March 5, 2015.  He reestablished that position by buying 1 LTM March 20, 2015 $60 call option later in the day on March 5, 2015, before the Wall Street Journal published its article.

least ten pounds of marijuana as a kickback for sharing the inside information about Life Time. Kourtis sold the marijuana for over $20,000.

**ANSWER:**

To the extent that the allegations in paragraph 60 of the Complaint relate to Weller, and require a response, Weller denies the allegations and demands strict proof thereof. Weller further denies Weller gave Kourtis at least ten pounds of marijuana as a kickback for sharing the inside information about Life Time. Kourtis sold the marijuana for over $20,000.

**FIRST CLAIM FOR RELIEF**
**Violations of Section 10(b) of the Exchange Act**
**and Rules 10b-5 Thereunder**

73.    The Commission realleges and incorporates by reference paragraphs 1 through 72, as though fully set forth herein.

**ANSWER:**

Weller realleges and incorporates by reference his answers to paragraphs 1 through 72 as fully answered herein.

74.    Fleming had a duty to keep material nonpublic information regarding the Life Time merger confidential. Fleming learned the information about the merger as a result of his employment at Life Time, and he knew or recklessly disregarded that he owed a fiduciary or similar duty of trust and confidence to Life and its shareholders to keep the information confidential and refrain from tipping the information to others. In breach of that duty, Fleming intentionally or recklessly communicated material nonpublic information to Beshey so that he could use the information in connection with securities trading. Fleming communicated material nonpublic information to Beshey in exchange for a personal benefit or with the expectation of receiving a benefit.

**ANSWER:**

Paragraph 74 of the Complaint states legal conclusions for which no responsive pleading is required. To the extent the allegations in paragraph 74 require a response Paragraph 74 of the Complaint does not relate to Weller and no responsive pleading is required. To the extent that the allegations in paragraph 74 of the Complaint relate to Weller, and require a response, Weller

denies the allegations and demands strict proof thereof. To the extent that the allegations in

paragraph 74 do not relate to Weller, he denies knowledge and information sufficient to form a

belief as to the truth of the allegations, which should be construed as a specific denial for the

purpose of Federal Rule of Civil Procedure 8.

75.     Beshey, Bonvissuto, Kourtis, Carclucci, Kandalepas, Mansur, and Weller traded
or tipped others to trade on the basis of material nonpublic information despite knowing, or being
reckless in not knowing, that the information was material and nonpublic. Beshey, Bonvissuto,
Kourtis, Carclucci, Kandalepas, Mansur, and Weller knew, were reckless in not knowing, should
have known, or consciously avoided knowing that the material nonpublic information was
disclosed or misappropriated in breach of a fiduciary duty or obligation arising from a similar
relationship of trust or confidence. Beshey, Bonvissuto, Kourtis, Carclucci, Kandalepas,
Mansur, and Weller knew, were reckless in not knowing, should have known, or consciously
avoided knowing that the material nonpublic information was disclosed or misappropriated in
exchange for a personal benefit or with the expectation of receiving a benefit.

**ANSWER:**

Paragraph 75 of the Complaint states legal conclusions for which no responsive pleading

is required. To the extent that the allegations in paragraph 75 of the Complaint relate to Weller,

and require a response, Weller denies the allegations and demands strict proof thereof. To the

extent that the allegations in paragraph 75 do not relate to Weller, he denies knowledge and

information sufficient to form a belief as to the truth of the allegations, which should be

construed as a specific denial for the purpose of Federal Rule of Civil Procedure 8.

76.     By engaging in the conduct described above, Beshey, Bonvissuto, Kourtis,
Carclucci, Kandalepas, Mansur, and Weller, directly or indirectly, in connection with the
purchase or sale of securities, by the use of means or instrumentalities of interstate commerce, or
of the mails, with scienter: (a) employed devices, schemes, or artifices to defraud; (b) made
untrue statements of material fact or omitted to state material facts necessary in order to make the
statements made, in the light of the circumstances under which they were made, not misleading;
and (c) engaged in acts, practices, or courses of business which operated or would operate as a
fraud or deceit upon other persons, including purchasers and sellers of securities.

**ANSWER:**

Paragraph 76 of the Complaint states legal conclusions for which no responsive pleading is required. To the extent that the allegations in paragraph 76 of the Complaint relate to Weller, and require a response, Weller denies the allegations and demands strict proof thereof. To the extent that the allegations in paragraph 76 do not relate to Weller, he denies knowledge and information sufficient to form a belief as to the truth of the allegations, which should be construed as a specific denial for the purpose of Federal Rule of Civil Procedure 8.

77. By reason of the conduct described above, defendants, directly or indirectly, violated and, unless enjoined will again violate, Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rules 10b-5 thereunder [17 C.F.R. § 240.10b-5].

**ANSWER:**

Paragraph 77 of the Complaint states legal conclusions for which no responsive pleading is required. To the extent that the allegations in paragraph 77 of the Complaint relate to Weller, and require a response, Weller denies the allegations and demands strict proof thereof. To the extent that the allegations in paragraph 77 do not relate to Weller, he denies knowledge and information sufficient to form a belief as to the truth of the allegations, which should be construed as a specific denial for the purpose of Federal Rule of Civil Procedure 8.

## PRAYER FOR RELIEF

The prayer for relief contains summary allegations, legal conclusions, and requests for relief to which no response is required. Weller, denies that the SEC is entitles to any relief as there was no viltion of securities laws. Weller further requests the SEC be denied all requested relief in paragraphs I through V

## GENERAL DENIAL

To the extent necessary, where not admitted, denied, or qualified, Weller denies each and every remaining allegation contained in the Complaint.

## AFFIRMATIVE DEFENSES

Eric L. Weller asserts the following defenses without assuming the burden of proof or any other burden if such burdens would otherwise be on the SEC.

### First Defense

The Complaint, and each of its purported claims, fails to state a claim upon which relief can be granted.

### Second Defense

The Complaint, and each of its purported claims, fails to plead fraud with particularity.

### Third Defense

The Complaint, and each of its purported claims, fails to plead scienter with particularity.

### Fourth Defense

The purported claim against Weller and the allegations upon which it is based are improperly vague, ambiguous, confusing, and omit critical facts.

### Fifth Defense

The allegations of the Complaint do not state legally supportable claims under the federal securities laws.

### Sixth Defense

The claims and allegations set forth in the Complaint are barred, in whole or in part, by documentary evidence.

### Seventh Defense

Weller acted in good faith and not with the requisite scienter.

### Eighth Defense

Weller did not have the requisite knowledge that any other Defendant in this action maintained or breached a fiduciary duty to Life Time and/or would receive, or already received, a benefit for providing information about Life Time to any other Defendant in this action.

### Ninth Defense

The SEC's claim for injunctive relief is barred, in whole or in part, because there has been no violation of the Securities Act or the Exchange Act and because there is no reasonable likelihood that any violation will be repeated.

### Tenth Defense

The SEC's claim for disgorgement is barred, in whole or in part, because the SEC lacks the statutory authority to seek and obtain disgorgement.

### Eleventh Defense

The SEC's complaint has failed to plead facts which, even if taken as true, demonstrate the conversation, Weller had with Kourtis, gave Weller sufficient information to be aware of Shane Fleming's breach of a fiduciary duty. Fraud under the securities laws requires such knowledge, and so, as a matter of law, a failure to demonstrate a tippee's knowledge of a breach of fiduciary duties is a failure to demonstrate a violation of §10(b) of the '34 Act or Rule 10b-5 thereunder.

### Twelfth Defense

Weller was never given information which would put him on notice of Fleming's nefarious intent and so cannot be found to have knowledge of a fiduciary breach under the purpose or intention theory to determine whether the insiders were receiving a personal benefit when disclosing the inside information.

## Thirteenth Defense

The SEC cannot rest on the mere allegation that Weller knew that Mr. Beshey was close friends with the insider. That is because mere friendship without more, such as proof that the insider intended to benefit the first-level tippee, fails to establish that the insider received a benefit.

## Fourteenth Defense

As a remote tippee, Weller was permitted to trade while in possession of material, nonpublic information unless he knew both that the insider disclosed the information in breach of a duty and for a personal benefit.

## ADDITIONAL DEFENSES

Weller denies sufficient knowledge or information at this time as to which he may have additional and as yet unstated defenses. Weller reserves the right to assert additional defenses.

## PRAYER FOR RELIEF

Based upon the foregoing, Eric L. Weller prays that this Court deny any relief or request for judgment on behalf of the SEC and dismiss this action against Weller in its entirety, with prejudice. Weller prays for such other and further relief as may be appropriate, or that the Court deems just and proper.

## JURY TRIAL DEMAND

Weller hereby demands trial by jury in the above-captioned action as to all issues and claims.

Respectfully submitted,
/s/ Nishay K. Sanan
Nishay k. Sanan
53 W. Jackson Blvd.,
Suite 1424 Chicago, Illinois 60604
Tel: 312-692-0360
Nsanan@aol.com